Date signed October 28, 2013



ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

In re:                                    *

Robert Wallace                            *        Case No. 09-32921-RAG
Cherie J. Brooks-Wallace                           Chapter 7
                                          *
        Debtors

*       *       *       *       *       *       *       *       *       *       *       *       *

GBBR Federal Credit Union                 *

        Plaintiff                         *

v.                                        *        Adversary No. 10-00126-RAG

Robert Wallace                            *
Cherie J. Brooks-Wallace
                                          *
        Defendants

*       *       *       *       *       *       *       *       *       *       *       *       *

## MEMORANDUM OPINION IN SUPPORT OF
## <u>ORDER ENTERING JUDGMENT AS TO LIABILITY BY DEFAULT</u>

## I.    <u>Preliminary Statement</u>

On November 24, 2010 Robert and Cherie Wallace (Defendants) filed their Voluntary Petition (Petition) for relief under Chapter 7 of the United States Bankruptcy Code.[1]  The dispute addressed in this Opinion arises out of the Wallaces' alleged pre-bankruptcy vehicle purchase scheme to defraud GBBR Federal Credit Union (Plaintiff) out of approximately $126,000. GBBR filed its Complaint to Determine Dischargeability of Debts (Complaint) (Dkt. No. 1) on March 1, 2010 in order to have that sum excepted from the Wallaces' discharge.  To that end, the Complaint asserted claims for false pretenses, false representation, actual fraud (Section 523(a)(2)(A)), larceny (Section 523(a)(4)) and willful and malicious injury (Section 523(a)(6)).[2] Defendants filed their Answer to Complaint to Determine Dischargeability of Debts (Answer) (Dkt. No. 5) on March 31, 2010.

Over the course of this Adversary Proceeding, the Defendants repeatedly failed to either provide discovery or obey the Court's directives regarding those failures and took other actions purposefully intended to block this case's meritorious resolution.  Eventually, it became clear that the Defendants were behaving that way because they did not intend to either cooperate or offer a defense on the merits.  The Court issued several warnings that the Defendants' conduct would lead to the entry of a default judgment but those proved to be virtually useless as inspiration.  Hence, the Defendants eventually convinced the Court that they were behaving in

---

[1] Unless otherwise noted, all statutory citations are to the Bankruptcy Code (Code), found at Title 11 of the United States Code and all rule citations are to the Federal Rules of Bankruptcy Procedure (Rules).

[2] GBBR's fellow creditors Manheim Remarketing, Inc. (Manheim) and Manheim Automotive Financial Services, Inc. (MAFS), filed a separate Adversary Proceeding (Case No. 10-00128) that likewise sought to except from the Wallaces' discharge the indebtedness owed to Manheim and MAFS.  The two cases ran on parallel tracks, especially including the Defendants' substantially similar stall tactics, defaults and bad faith.  Judgment by default will also be entered in Case No. 10-00128.

bad faith, that there would be no compliance with the Court's orders and that the only viable option was the entry of judgment by default.[3]

## II.    The Complaint's Allegations

### a.    The Parties

GBBR does not provide much in the way of self-identification in the Complaint.[4] However, by its name, and the facts alleged, it appears that GBBR is in the money lending business.  GBBR's description of the Defendants' background is also sparse, save for the allegation that they were involved in the used car business.[5]

### b.    The Alleged Claims for Relief

The Complaint includes six separate Counts.  However, its entire factual core is bounded by the events surrounding two personal automobile loans made by GBBR to the Wallaces.  The first three counts focus upon an August 6, 2008 loan for $66,865.58 (Loan I) ostensibly made to Mr. Wallace to purchase a 2007 Mercedes (Mercedes I).  The rest set forth claims that arise from a July 16, 2008 loan to Ms. Wallace for $58,970 (Loan II) that was to be used to purchase a 2006 Mercedes (Mercedes II).  According to the Complaint, Mr. Wallace caused an empty shell entity to submit a "bogus" bill of sale (fashioned to appear to be the bill of sale of a *bona fide* Pennsylvania entity), and employed other nefarious means, to induce Loan I.  Once the loan proceeds were in hand, however, Mr. Wallace neither used them to purchase Mercedes I nor did he act to secure the lien of GBBR against Mercedes I as he allegedly promised.  Per the

---

[3] The Court has apologized to the parties for the delay between the filing of the final papers and this decision. However, the apology, and the fact that the reasons for it were both serious and beyond the Court's control, bears repeating here.

[4] GBBR's stated address is 1306 Bellona Avenue, Lutherville, Maryland 21093.

[5] Manheim and MAFS's Complaint to Determine Dischargeability of Debts (Manheim Complaint) in Case No. 10-00128 alleges more detail as to the Defendants' pre-bankruptcy business dealings and escapades.  Some of those allegations are included in the Memorandum Opinion in Support of Order Entering Judgment as to Liability by Default issued concurrently in Case No. 10-00128.

Complaint, the money was never repaid nor was Mercedes I recoverable to liquidate as a credit against the debt. Count One therefore asserts that the Defendants committed a willful and malicious injury to the "property of another". Count Two asserts that the Defendants intentionally made false representations to the Plaintiff to secure Loan I and therefore committed actual fraud. Count Three avers that the loan proceeds were converted by the Defendants in an act of larceny. All told, the Complaint therefore asserts that the $66,865.58 debt should be excepted from the Defendants' discharge on all three statutory grounds. The remaining three counts parrot the alleged transactions described above with respect to Loan II to Ms. Wallace and seek to have the sum of $66,866 excepted from the Defendants' discharge for the same statutory reasons. [6]

## III.   **Procedural History**

A Pretrial Conference (Conference) was held on May 18, 2010. The Plaintiffs were represented and both Defendants attended, albeit without counsel. However, before the Conference, on March 30, 2010, the Defendants filed a Motion for Extension of Time to Answer Complaint (Extension Motion) in Case No. 10-00128. The Extension Motion asserted that they needed additional time to engage an attorney and then bring that attorney up to speed. This is relevant because during the Conference, the Defendants' reiterated the same argument in this case and asked that each be delayed for that reason. Mr. Wallace stated that he and his wife had arranged for counsel just that morning, but the arrangement had fallen through because of their inability to pay the entire requested retainer. Accordingly, he asked for additional time to raise the necessary funds – to be supplied in part by his father who Mr. Wallace claimed was away traveling – and complete the hiring. Counsel for Manheim and MAFS objected vigorously to the

---

[6] It appears that this prayer for damages may be in error as it is the same amount of damages requested in connection with Loan I. Elsewhere in the Complaint the Plaintiff states that it incurred damages in the amount of $28,119.71 as a result of Loan II and that the original amount of the loan was $58,970.00.

request, asserting that the Defendants had used similar pleas to improperly delay the pre-bankruptcy civil action filed against the Wallaces.[7]  Nevertheless, the Court delayed the commencement of discovery by forty five (45) days to allow the Defendants an additional, extended opportunity to obtain counsel.[8]  The pretrial schedule was placed on the record without further objection from the Wallaces. Discovery was to be completed by December 31, 2010 and trial was scheduled for April 11, 2011 at 10:00 a.m.  On June 1, 2010, the Scheduling Order (Dkt. No. 7) was entered and a copy was mailed to Defendants on June 3, 2010.

On October 8, 2010, the Plaintiff filed a Certificate of Service of Written Discovery Requests upon the Wallaces, indicating service of interrogatories, requests for production of documents and requests for admissions (Dkt. Nos. 9 and 10).  On December 16, 2010, the Plaintiff filed Certificates of Service of the Deposition Subpoena and Notice of Deposition for the Defendants and others  (Dkt. Nos. 11-16).  These certificates indicated that Debtors had been served with a subpoena on November 9, 2010 for a deposition to held on the 23rd of that same month.  However, on the same date, the Plaintiff also filed a Motion to Extend Discovery Deadline (Motion to Extend) (Dkt. No. 17) and a Motion to Compel and for Sanctions (Motion to Compel) (Dkt. No. 18) both of which asserted that the Defendants had failed to respond to discovery requests and that (a) the discovery deadline should be extended and (b) the Defendants should be compelled to provide substantive responses.  In pertinent part, the Motion to Extend stated:

> Plaintiff propounded to both Defendants Interrogatories and
> Requests for Production of Documents (the "Discovery").  Plaintiff
> also noted the depositions of both Defendants... .

---

[7] That case is *Manheim Pennsylvania Auction Services, Inc., et al. v. DCRW, Inc. T/A Bith Group, et al.,* BPG-09-0174 pending in the United States District Court for the District of Maryland.

[8] The Wallaces never hired counsel.

Responses to Interrogatories and Requests for Production of
Documents were due on or before November 8, 2010.

Defendants have not answered the Interrogatories nor have they
provided anything more than a miniscule portion of the documents
requested, despite numerous promises from the Defendants to the
contrary.

*       *       *

The deposition of Mr. Wallace was commenced on November 23,
2010 and was continued for a number of reasons, including the fact
that Mr. Wallace had to leave to pick up his children from child
care that afternoon.  Mr. Wallace had agreed to contact counsel for
Plaintiff within the first week of December to provide information
as to when he would be available to resume his deposition and as
to when he would produce complete responses to the Discovery.
To date, the Defendants have failed to provide that information and
have not provided the responses to the Discovery despite full
knowledge of the looming deadline.

*       *       *

Through no fault of the Plaintiff, discovery has not been
completed.  Discovery was delayed by the Court 30 days in order
for the Defendants to retain counsel to represent them in this
matter.  No counsel was ever retained by Defendants and this fact
alone has lead to much of the delay associated with discovery.

(Mot. to Extend 1-4.)

Likewise, relevant portions of the Motion to Compel stated:

To date, the Defendants have failed to answer the Interrogatories
and have only produced a miniscule number of documents, while
admitting they have more documents that should be produced
pursuant to the Discovery.

On at least six (6) occasions Plaintiff's counsel has communicated
with Defendant, Robert D. Wallace, about producing the Answers
and Responses.  On two occasions the parties agreed to new dates
when the Answers and Responses would be the produced by
Defendants.  Defendants failed to meet any of these deadlines. …
Despite these communications, as of the date of the filing of this
Motion, Defendants have still not produced discovery and nor have
they indicated when that discovery will be forthcoming.

6

*     *     *

> Rule 37(d) permits the Court to assess appropriate sanctions for
> such failure to respond to discovery including, default and
> requiring an award of attorney's fees to the movant.
>
> Since the Defendants have failed to respond within an appropriate
> time and have failed to seek a fourth extension from the Credit
> Union for responding to that discovery, they should be precluded
> from objecting to that discovery and must produce all of the
> information sought. [9]

(Mot. to Compel 1-2.)

No response was filed to either motion and on January 4, 2011, the Court entered orders
which (a) extended the discovery deadline to February 28, 2011, (b) ordered the Defendants to
respond fully and completely (including the production of documents) within ten (10) days to the
written discovery (First Order Compelling Discovery), (c) ordered them to provide ten (10)
available dates so depositions could be scheduled and (d) pay $500 as a sanction for their
repeated failure to respond (Dkt. Nos. 19 and 20).

Despite the First Order Compelling Discovery, the Plaintiff had to file a Motion to
Compel and for Sanctions (Dkt. No. 23) (Second Motion to Compel) on February 25, 2011. The
Memorandum of Law in Support of the Second Motion to Compel provided a completely
accurate, and even somewhat understated, characterization of the Defendants' conduct up to that
point including the following:

> Defendants failed to comply, in all material aspects, with
> this Court's Order. Defendants finally submitted what Defendants
> contended was their responses to Plaintiff's discovery requests on
> January 20, 2011, fifteen days after the entry of the Court's Order.

---

[9] Plaintiff supported both Motions with compelling evidence of Defendants' utter failure to comply with the written
discovery requests. Although Mr. Wallace did appear for the abbreviated November 2010 deposition, it appears that
it was continued in part because of his, and his wife's, failure to respond to those requests, save for the production of
a few documents. The exhibits show that thereafter, Mr. Wallace repeatedly promised to comply with discovery but
would not do so voluntarily. The Plaintiff's Certification of Efforts to Resolve Discovery Dispute is attached to this
Opinion as Appendix I.

> Defendants' discovery responses were comprised of nothing more
> than untimely and nonsensical objections, improper answers, and
> an outright refusal to produce a single document. The depositions
> dates proposed by Defendants were the days immediately after
> Defendants submitted the untimely responses, January 21,
> providing virtually no notice in order to permit Plaintiff to actually
> schedule the depositions and included two separate weekends.
> Defendants did not make a single good faith effort to comply with
> this Court's Order dated January 4, 2011.
>
> *       *       *
>
> Sanctions pursuant to Rule 37(b) are proper. Defendants
> have had innumerable chances to comply with their discovery
> obligations. Instead, they have resisted, delayed, failed to live up
> to their promises, and refused to comply with a Court Order
> compelling responses. As a result of Defendants' intransigence in
> their discovery obligations, this matter has already been delayed
> once, and, in order to avoid prejudice to Plaintiff in this matter, a
> further request is, by necessity, included in this motion.
> Defendants were aware of what they had to do in order to avoid
> sanctions. Indeed, the Court's order is explicit. The
> communications instituted after the Court's Order were likewise
> explicit. Defendants have simply chosen to refuse to participate in
> any real sense with discovery. Therefore, sanctions are necessary
> and proper.

(Mem. in Supp. of Second Mot. to Compel 2-3, 8.)

While the Second Motion to Compel awaited a response, both parties filed status letters

on March 1, 2011. The letters are a study in contrasts. Plaintiff's Status Letter (Dkt. No. 26)

asserts that because the Defendants had not provided discovery, and failed to comply with the

First Order Compelling Discovery, trial preparation had been at a standstill. The Defendants'

Case Update (Dkt. No. 25) asserts that they had complied with discovery and otherwise devolves

into a rant proclaiming victimhood.

On March 10, 2011, the Defendants filed a Response to the Memorandum of Plaintiff's

Motion to Compel and for Sanctions (Dkt. No. 27)[10] and fourteen (14) days later, the Plaintiff

---

[10] Copies of the documents (eighteen pages) provided to the Plaintiff were attached to that paper.

filed a Reply in Support of Motion to Compel and for Sanctions (Dkt. No. 28). A hearing was held on the Second Motion to Compel on April 5, 2011, only six days before the original trial date. GBBR was represented at the hearing. Mr. Wallace appeared but his wife did not. At that hearing, the Oversigned concluded that the Wallaces had not complied with the First Order Compelling Discovery; the lack of compliance was evident from the face of their January 20th written responses which define the phrase, "playing fast and loose". Instead of substantively responding, the Wallaces submitted a series of objections and non-answers written in amateur legalese. Accordingly, the Oversigned ordered Mr. and Mrs. Wallace to (a) respond in full to the written discovery within thirty days and (b) schedule dates for their depositions to be held. A subsequent hearing was also scheduled for June 13, 2011 to deal with further, potential non-compliance. Mr. Wallace was warned that if at the subsequent hearing, it was determined that he and his wife had not complied with the Court's directives, the likely outcome would be the entry of a default judgment declaring the amount due non-dischargeable. A new trial date of August 10, 2010 was also selected.

On May 6, 2011, the Plaintiff filed a Line (Dkt. No. 36) that acknowledged the production of some documents but also continued to assert that the Defendants were not in compliance with the First Order Compelling because they had not submitted substantive responses to the written discovery. In response, on May 20, 2011 the Defendants filed a Line (Dkt. No. 39) stating that they were cooperating and had provided discovery.

The June 13, 2011 status conference went forward. Plaintiff's Counsel reiterated that while some documents had been provided, other key documents, such as bank and corporate records, had not been. Moreover, the Defendants still had not amended their written discovery

responses to eliminate objections and diversions and provide substantive responses.  Finally, no depositions had been scheduled and the $500.00 sanction had not been paid.

Because some effort had been made to provide discovery, the Court gave the Defendants another thirty days (a deadline of July 13, 2011) to provide full and responsive answers to discovery (including an itemization and categorization of documents provided) and to sit for a deposition.[11]  However, the Court reiterated that further failure to fully respond to discovery would result in default judgment being entered against Defendants.  On June 21, 2011, an Order memorializing the June 13th holdings was entered.  The discovery deadline was extended to September 15, 2011, trial was re-scheduled for November 22, 2011 at 10:00 a.m. and Defendants were required to pay the original $500.00 sanction within thirty days (Dkt. No. 43).

On July 12, 2011, the day before the new discovery compliance deadline, the Defendants filed a Request for a Continuance/Postponement (Request for Continuance) (Dkt. No. 48).[12]  The Request for Continuance asked for a 180 day stay of this case because "the mother of the debtors" (sic) would be undergoing "high risk brain surgery on July 21, 2011" and her recovery would demand both Debtors' "uninterrupted attention" and thus consume all of their available time for at least six months.  On July 13, 2011, Defendants filed their Response to Interrogatories (Dkt. No. 49) and on July 14, 2011 Defendants filed their Response to Request for Production of Documents (Document Response) (Dkt. No. 51).  The Document Response did not include copies of any documents or specifically identify documents allegedly produced.  In response, Plaintiff filed its Renewed Motion for Sanctions (Renewed Motion) (Dkt. No. 54) on August 11,

---

[11] The Oversigned was made aware during the Status Conference that Mr. Wallace had been partially deposed on November 23, 2010, a fact that had been previously overlooked by the Court although candidly noted by the Plaintiff in previously filed papers.  During the hearing, the Defendants were also instructed to file their written discovery responses with the Court so the Oversigned could review their quality.

[12] The identical request was made in Case No. 10-00128.

2011.  Plaintiff alleged that the Defendants had not provided any new documents since their meager production, had not in fact provided other documents that they claimed they had provided and still had not provided the vast bulk of documents requested. [13]  This included bank records.

A hearing was held on the Request for Continuance and the Renewed Motion on August 30, 2011.[14]  Mr. Wallace testified as to the demands placed on him by his mother's surgery.  It quickly became clear that the representations he made in the Request for Continuance were false.  At worst, he would only need to drive his mother to the hospital one or two times a week.  He mentioned nothing about his wife's involvement in his mother's care and Mrs. Wallace did not appear at the hearing.  Hence, it was evident that there would be no conflict with the trial preparation obligations that they had already essentially ignored for over a year and the Request for Continuance was denied.

However, as the Renewed Motion for Sanctions did not include evidence of what documents had been produced, the Court declined to act upon it.  Instead, the Court held the Renewed Motion open pending depositions (already scheduled for September 14, 2011) that would, in part, be used to examine the Defendants as to the documents requested and allegedly not produced.  The Court again informed Mr. Wallace that there would be consequences if the requested documents had not been produced.

Incredibly (or perhaps not), the Wallaces did not appear for their depositions.  *See* Plaintiff's Motion for Sanctions and Supplement to Renewed Motion for Sanctions (Dkt. No. 62), filed on September 15, 2011.  On October 24, 2011, six months after the original trial date,

---

[13] A copy of the Renewed Motion is attached as Appendix II.

[14] A hearing regarding the Request for Continuance and the Defendants' parallel discovery failures was also held in Case No. 10-00128.

the Court held a hearing on the two pending motions for sanctions.  At the hearing, Mr. Wallace

stated, "We never received the deposition date.  The first time I heard about it was when the

motion that I got in the mail. Otherwise we would have showed upon the 14th.  But we didn't

receive regarding (sic) that date."  (Tr. 3, Oct. 24, 2011.)

In light of all that had gone on in this case (and Case No. 10-00128), the Court concluded

at this point that Mr. Wallace was not telling the truth and was proceeding in bad faith.  The

Court also concluded that Mrs. Wallace was equally (and perhaps more) guilty as she had

allowed her husband to take the lead in bungling things, had not appeared in Court since the

Conference and had done nothing to rectify her defaults.  The Court therefore informed the

parties that a default judgment would be entered against the Wallaces.

## III.    Jurisdiction.

This Court has jurisdiction over this adversary proceeding in accordance with 28

U.S.C.§§ 157 and 1334.  Venue is likewise proper under 28 U.S.C. §1409(a).

## IV.    Analysis.

Federal Rule of Civil Procedure 37(b)(2)(A)(vii), as incorporated by Rule 7037, applies

in this adversary proceeding.  A default judgment may be entered against a party, "if [the party]

… fails to obey an order to provide or permit discovery …".  A default judgment is one of the

most severe sanctions that a court may use under Rule 7037 and is warranted only where "the

party's noncompliance represents bad faith and callous disregard for the authority of the

[bankruptcy] court and the Rules".  *Mutual Fed. Sav. and Loan Ass'n. v. Richards & Assocs.,*

*Inc.*, 872 F.2d 88, 92 (4th Cir. 1989).  The Court must consider:  "(1) whether the noncomplying

party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary,

which necessarily includes an inquiry into the materiality of the evidence he failed to produce;

(3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions." *Id.* (internal citations omitted).  The record in this case supports the entry of a default judgment.

### A.  The Wallaces' Bad Faith

A defendant's repeated failure to diligently comply with discovery requests reflects bad faith and disrespect to the authority of the Court.  *Mutual Fed. Sav. and Loan*, 872 F.2d at 93 (finding that noncompliance and haphazard compliance with three discovery orders substantially supported a finding of bad faith).    From the May 2010 Conference until the final October 2011 hearing, the Defendants have relied upon falsehoods and manufactured delay while thumbing their noses at the Plaintiff's discovery and the Court's Orders.  Their failure to appear at the September 14, 2011 deposition was the final straw.  The Court repeatedly warned the Defendants that a default judgment would be entered against them if they continued to ignore the legitimate discovery process and the Court's orders.   The warnings were intended to give them a chance at amelioration. *See  Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995) ("[A] party 'is entitled to be made aware of the drastic consequences of failing to meet the court's conditions at the time the conditions are imposed, when he still has the opportunity to satisfy the conditions and avoid' the sanction." (citing *Choice Hotels Int'l v. Goodwin & Boone*, 11 F.3d 469, 473 (4th Cir. 1993)).  Nevertheless, the warnings were ignored.  While a default judgment is a severe sanction, the Court ultimately became convinced that the Defendants were never going to rectify their pattern of non-compliance.  Their conduct is a monument to bad faith and this element is overwhelmingly satisfied.

### B.    Prejudice to the Plaintiff

This case concerns allegations that Defendants had fraudulently converted $126,000 from Plaintiff and deprived the Plaintiff of its lien rights.  The Plaintiff was rightfully entitled to, among other things, the bank and business records requested and to have those records at hand while conducting depositions.  Evidence as to how the loan proceeds were expended would be especially relevant.  Other records that might reflect upon the Defendants state of mind would carry equal weight.  But most of the documents produced and made available to the Court did not appear to be very relevant at all.  Yet, not only did the Defendants refuse to turnover relevant documents they ultimately refused to even appear for depositions intended to (a) review the merits of the case and (b) determine precisely what documents were either available or lacking.  That failure removed any pretense of cooperation and confirmed the worse.  It also prejudiced the Plaintiff in a way that demonstrated the futility of lesser sanctions.  *See e.g. Mutual Fed. Sav. and Loan*, 872 F.2d at 93 ("Mutual suffered great prejudice as a result of the defendants' misconduct because Mutual could not prove its case … without the business and bank records withheld.").  The Plaintiff must be given a realistic opportunity to examine the Defendants with relevant records at hand before trial particularly because their state of mind at the time of the events in question is a crucial underlying element to a claim of fraud.  Because this opportunity was effectively withheld, Plaintiff was prejudiced by Defendants' attempts to hinder and delay the judicial process.

### C.    The Need for Deterrence and the Effectiveness of Less Drastic Sanctions

The default judgment, "must be available… in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."  *National Hockey League v.*

*Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).  However, the court should consider if a lesser sanction would do before granting a default judgment.  *See e.g. Anderson v. Foundation for Advancement, Education, and Employment of Am. Indians*, 155 F.3d 500, 504-5 (4th Cir. 1998) (looking closely at the fact that the district court imposed lesser sanctions before entering default judgment).

The Defendants were fined $500 in the First Order Compelling Discovery.  That still unpaid sanction turned out to be meaningless.  A second order compelling discovery followed on June 13, 2011 but that had as much effect as the first, which is none.  Over the course of this Adversary Proceeding, the Defendants' repeatedly and unrepentantly failed to comply with their trial obligations.  In this setting ─ where the Defendants provided only the barest response to written discovery and failed to appear at a 'one last chance' deposition ─ the Oversigned is hard pressed to see what lesser sanction could have been used.  The Plaintiff was entitled to discoverable information before going to trial and the Defendants were not going to let that happen.  Hence, this Adversary Proceeding has been unable to proceed.  Therefore, entry of default judgment is appropriate.

## V.    Conclusion.

A default judgment as to liability, with the Plaintiff given an opportunity to prove damages, shall be ordered.

**End of Opinion**

# APPENDIX I

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE: | * | |
| | | |
| **ROBERT WALLACE** and | * | **Case No.: 09-32921 RAG** |
| **CHERIE J. BROOKS-WALLACE** | | |
| *Debtors* | * | **Chapter 7** |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

| | | |
|---|---|---|
| **GBBR FEDERAL CREDIT UNION** | * | |
| | | |
| *Plaintiff* | * | |
| | | |
| **vs.** | * | **Adversary No.: 10-00126** |
| | | |
| **ROBERT WALLACE** and | * | |
| **CHERIE J. BROOKS-WALLACE** | | |
| *Defendants* | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### CERTIFICATION OF EFFORTS TO RESOLVE DISCOVERY DISPUTE

The undersigned counsel for GBBR Federal Credit Union (the "Plaintiff") certifies that Plaintiff and the pro se defendants have been unable to reach agreement after the following good faith attempts to discuss and resolve the discovery disputes which are the subject of Plaintiff's Motion to Compel Discovery and for Sanctions. In further support the undersigned certifies as follows:

1.     On November 8, 2010 the undersigned and defendant, Robert D. Wallace, had a telephone conversation wherein the Defendants' past due responses to the Plaintiff's written discovery requests, (i.e., interrogatories to both Defendants and Requests to Production of Documents to both Defendants) were disused and it was agreed by the communicants that the Defendants would produce their written

discovery responses by the end of that week or the early part of the next week. (November 16, 2010).

2.      On November 8, 2010 counsel for Plaintiff confirmed this agreement in writing. See Exhibit 1 and attached hereto and incorporated herein by reference.

3.      On November 16, 2010 the undersigned contacted defendant, Robert D. Wallace by telephone during which time Mr. Wallace stated that he was still working on the Answers to Interrogatories and pulling together the documents for the responses to the Requests for Production of Documents. Mr. Wallace agreed that he could have those responses to the undersigned by the end of that week. (November 19, 2010).

4.      On November 21, 2010, the undersigned wrote to Mr. Wallace about his failure to meet the two extensions granted to him to provide written responses to the Interrogatories and Requests for Production of Documents. The undersigned demanded that the responses be received by November 22, 2010 by 2:00 p.m., less than 24 hours prior to his scheduled deposition. See Exhibit 2 attached hereto and incorporated herein.

5.      On November 23, 2010, during the deposition taken of Robert D. Wallace, Mr. Wallace agreed to provide the undersigned with a date certain whereby Plaintiff would be receiving responses to the written discovery requests propounded by the Plaintiff. The Defendants were to provide this drop dead date no later than the week after the deposition. No such due date was provided by the Defendants. See Exhibits 3 and 4 attached hereto and incorporated herein. Response to the Discovery remain outstanding.

I HEREBY CERTIFY THAT THE FOREGOING IS TRUE AND CORRECT AND

BASED UPON MY PERSONAL KNOWLEDGE.


/s/ Douglas H. Seitz
Douglas H. Seitz (Fed. Bar No. 04909)
Offit Kurman, PA
8 Park Center Court, Suite 200
Owings Mills, Maryland  21117
(443) 738-1584
dseitz@offitkurman.com
Attorneys for GBBR FEDERAL CREDIT UNION

# APPENDIX II

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE: | * | |
| | | |
| ROBERT WALLACE | * | Case No.:  09-32921-RG |
| and | | |
| CHERIE J. BROOKS | * | CHAPTER 7 |
| | | |
| Debtors | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

| | | |
|---|---|---|
| GBBR FEDERAL CREDIT UNION | * | |
| | | |
| Plaintiff | * | |
| | | |
| v. | * | |
| | | |
| ROBERT WALLACE | * | |
| and | | |
| CHERIE J. BROOKS-WALLACE | * | Adv. No. 10-00126-RG |
| | | |
| Defendants | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### <u>PLAINTIFF'S RENEWED MOTION FOR SANCTIONS</u>

Plaintiff hereby renews its motion for Sanctions.  Defendants have been given

extraordinary leniency in complying with their discovery obligations and yet continue to refuse

to properly produce documents.  As a result, Defendants have successfully delayed these

proceedings beyond the realm of reasonableness.[1]  Indeed, Defendants were ordered to fully

respond to Plaintiff's discovery requests on January 4, 2011 and again on April 5, 2011, and

again on June 21, 2011.  Yet, despite these Orders, Defendants have failed to produce any

additional documents, including bank statements which were specifically addressed during the

hearing on June 13, 2011.  As a result, Defendants have still not complied with this Court's

---

[1] Defendants have now requested an additional six-month stay when this matter would have already been concluded had Defendants complied with any one of this Court's three orders mandating compliance with the discovery rules.

Orders, despite being given numerous last-chance opportunities to do so. Moreover, Plaintiff cannot prosecute this matter without the documents demanded of Defendants and is therefore, severely prejudiced.

## I.    Background

This matter is straightforward.  Plaintiff alleges that Defendants obtained two car loans from Plaintiff and then fraudulently deposited the checks issued by Plaintiff for the purchase of the vehicles into their personal accounts. The checks were issued to L&A Auto Sales, a Pennsylvania company who regularly purchased vehicles for resale.  Plaintiff alleges that Defendants took the checks and then registered L&A Auto Sales as a trade name for the Bith Group, a company owned by the Defendants, for purposes of depositing the checks into an account where Defendants had access to the proceeds. Plaintiff alleges that Defendants then absconded with the fraudulently obtained proceeds and did not repay the loans.

## II.    Requests and Responses

Defendants have failed to properly respond to Requests for the Production of Documents and have failed to provide the documents requested.[2] Defendants' responses do not indicate which documents provided relate to which documents requested.  Defendants' also failed to provide any additional documents above and beyond what was provided in April.  A summary of the documents requested and the limited responses given is provided below:

**Request No. 1:**        All documentation pertaining to **Contract #1**.

Response:        We have included all loan paperwork in our possession, custody or control, or in the possession of family, attorneys, accountants or agents, in the documents submitted.  No other information is in our possession.  The Plaintiff also has a copy of all the

---

[2] As an initial matter, Defendants attempted to respond to the wrong Requests for the Production of Documents.  Amended Requests were sent to and received by Defendant on August 30, 2010.

applicable loan documents and the application.  I Robert Wallace have checked through all my records and files in an attempt to identify the documents.

  Response is improper:  Defendants response is nonsensical.  Defendant has not identified a single document produced in response to this request.

**Request No. 2:**  All documentation pertaining to **Contract #2**.

  Response:  We have included all loan paperwork in our possession, custody or control, or in the possession of family, attorneys, accountants or agents, in the documents submitted.  No other information is in our possession.  The Plaintiff also has a copy of all the applicable loan documents and the application.  I Robert Wallace have checked through all my records and files in an attempt to identify the documents.

  Response is improper:  Defendants response is nonsensical.  Defendant has not identified a single document produced in response to this request.

**Request No. 3:**  All documentation pertaining to **Loan #1**.

  Response:  We have included all loan paperwork in our possession, custody or control, or in the possession of family, attorneys, accountants or agents, in the documents submitted.  No other information is in our possession.  The Plaintiff also has a copy of all the applicable loan documents and the application.  I Robert Wallace have checked through all my records and files in an attempt to identify the documents.

  Response is improper:  Defendants response is nonsensical.  Defendant has not identified a single document produced in response to this request.

**Request No. 4:**  All documentation pertaining to **Loan #2**.

  Response:  We have included all loan paperwork in our possession, custody or control, or in the possession of family, attorneys, accountants or agents, in the documents

submitted.  No other information is in our possession.  The Plaintiff also has a copy of all the applicable loan documents and the application.  I Robert Wallace have checked through all my records and files in an attempt to identify the documents.

<u>Response is improper:</u>        Defendants response is nonsensical.  Defendant has not identified a single document produced in response to this request.

**Request No. 5:**      All documentation pertaining to **Vehicle #1**.

<u>Response:</u>      We have included all BOS and sales receipts that we have access to.  This should included the receipt for the vehicles, sales slips, sales orders, and copies of checks.

<u>Response is improper:</u>        Defendant produced one document, an unrelated bill of sale with a purchaser name of Frank R. Van Vilet, in apparent response to this request. No vehicle receipts, sales orders or copies of checks were produced.

**Request No. 6:**      All documentation pertaining to **Vehicle #2**.

<u>Response:</u>      We have included all BOS and sales receipts that we have access to.  This should included the receipt for the vehicles, sales slips, sales orders, and copies of checks.

<u>Response is improper:</u>        Defendant produced one document, an unrelated bill of sale with a purchaser name of Frank R. Van Vilet, in apparent response to this request. No vehicle receipts, sales orders or copies of checks were produced.

**Request No. 7:**      All documentation pertaining to **Sales Order #1**.

<u>Response:</u>      We have included all BOS and sales receipts that we have access to.  This should included the receipt for the vehicles, sales slips, sales orders, and copies of checks.

<u>Response is improper:</u>        Defendant produced one document, an unrelated bill of sale with a purchaser name of Frank R. Van Vilet, in apparent response to this request. No vehicle receipts, sales orders or copies of checks were produced.

4

**Request No. 8:**   All documentation pertaining to **Sales Order #2**.

    <u>Response:</u>   We have included all BOS and sales receipts that we have access to.  This should included the receipt for the vehicles, sales slips, sales orders, and copies of checks.

    <u>Response is improper:</u>   Defendant produced one document, an unrelated bill of sale with a purchaser name of Frank R. Van Vilet, in apparent response to this request. No vehicle receipts, sales orders or copies of checks were produced.

**Request No. 9:**   All documentation pertaining to **L&A Auto Sales [PA]**.

    <u>Response:</u>   We have included the lease, the business license, and insurance associated with the L&A Auto Sales (PA).

    <u>Response is improper:</u>   No such documents were provided.

**Request No. 10:**   All documentation pertaining to **L&A Auto Sales [MD]**.

    <u>Response:</u>   We have included the trade name registration, the business license, and insurances associated with L&A Auto Sales (MD).

    <u>Response is improper:</u>   No bank records were produced, despite being explicitly told to produce them during the hearing on June 13, 2011.

**Request No. 11:**   All documentation pertaining to **Check #1**.

    <u>Response:</u>   We have included the copies of the CHECKS 1 and 2 provided by the plaintiffs.  No other copies are paperwork in our possession, custody or control, or in the possession of family, attorneys, accountants or agents.

    <u>Response is improper:</u>   Defendants' responses are nonsensical and evidence an intentional act to avoid producing records. Indeed, Defendants failed to produce any bank records showing what happened to Check #1.  However, in subpoenaing the records of Defendants' company, DCRW Inc. which has a trade name of L&A Auto Sales, it is evident that

Defendants' deposited Check #1 into the account of DCRW Inc. *See* Subpoenaed records attached as Exhibit 1. Defendants' failure to provide such records is a blatant attempt to produce what Defendants want to produce rather than what was requested.

**Request No. 12:**        All documentation pertaining to **Check #2**.

        Response:        We have included the copies of the CHECKS 1 and 2 provided by the plaintiffs. No other copies are paperwork in our possession, custody or control, or in the possession of family, attorneys, accountants or agents.

        Response is improper:        Defendants' responses are nonsensical and evidence an intentional act to avoid producing records. Indeed, Defendants failed to produce any bank records showing what happened to Check #2. Defendants' failure to provide such records is a blatant attempt to produce what Defendants want to produce rather than what was requested.

**Request No. 14:**    All documentation **identifying** your employer(s) for the past five year period.

        Response:        The only employees were Robert Wallace and Cherie Brooks. No other persons were employed.

        Response is improper:        Defendants' failed to respond to the Request. Defendants provided no documentation identifying either of Defendants' employers for the past five years.

**Request No. 20:**    All documentation **identifying** all businesses which **you** have owned or held an interest in or been **employed** by since January 1, 2007.

        Response:        We have included documentation on 5 Star, L&A Auto Sales and BITHAUTO. This includes licenses, BOS and other trade name registration and business documentation.

        Response is improper:        No documentation regarding Defendants employment has

6

been provided.

**Request No. 24:**      All documentation pertaining to or **identifying** any bank account or any

other type of financial account in the name of "L&A Auto Sales" or in a name similar to L & A

Auto Sales.

      <u>Response:</u>      We have included documentation on the bank accounts pertaining to L&A

Auto Sales.  Plaintiff ahs requested documentation from the banks outlining the accounts upon

which payments were made.

      <u>Response is improper:</u>      Defendants responses are wholly unresponsive. Defendants

have not identified any bank accounts or any other type of financial account in the name of L&A

Auto Sales, outside of providing a "Welcome Letter" and policy information from P&C Bank.

Moreover, Defendants have not produced any bank statements or information from any bank or

other financial institution.

**Request No. 25:**      All documentation pertaining to or **identifying your** operation, transacting

business or holding yourself out as "L&A Auto Sales."

      <u>Response:</u>      We have included sales slips showing vehicles purchased and sold under

L&A Auto Sales.  These slips show that we were authorized to buy and sell under L&A Auto

Sales.

      <u>Response is improper:</u>      No such documents were produced.

**Request No. 26:**      All documentation pertaining to or **identifying** all bank or financial

accounts **you** have opened or have held any interest in, directly or indirectly, during the last four

years.

      <u>Response:</u>      The documents that we have including any statements and account

summary sheets for the account that we had access to during the last four years which payments

were made from are included.

<u>Response is improper:</u>        Defendants produced a "Welcome Letter" and policy information from P&C Bank identifying L&A Auto Sales and a screen shot from the Bank of America Website identifying DCRW, Inc.  No statements were produced and no information regarding personal accounts were produced.

**Request No. 27:**        All documentation pertaining to or supporting any position you take that your spouse, **CHERIE J. BROOKS,** who is also known as **CHERIE J. BROOKS-WALLACE** personally drove **Vehicle #1** the majority of the time it was titled in her name.

<u>Response:</u>        We have included a copy of the title, registration, and insurance showing that Cherie Brooks was the owner and primary driver of VEHICLE 2.

<u>Response is improper:</u>        No title or registration was included.

**Request No. 29:**        All documentation pertaining to or **identifying**, the bank or financial institution account into which **Check #1** was deposited, including documentation containing the name(s) of the owner(s) of such account ("Account Holder").

<u>Response:</u>        Same document and submitted with REQUEST 26.

<u>Response is improper:</u>        No such documents were provided with Request 26.

**Request No. 30:**        All documentation pertaining to or **identifying**, the bank or financial institution account into which **Check #2** was deposited, including documentation containing the name(s) of the owner(s) of such account ("Account Holder No. 2").

<u>Response:</u>        Same document and submitted with REQUEST 26.

<u>Response is improper:</u>        No such documents were provided with Request 26.

**Request No. 32:**        All documentation pertaining to the use of the proceeds of **Loan #1** and **Loan #2**.

8

Response:    No access to this information.  This is under the discretion of L&A Auto Sales and the associated auctions.

Response is improper:    Defendants' responses are nonsensical.  Defendants, in response to Requests 29 and 30, admitted to depositing the checks at issue into accounts set-up by Defendants for their personal access.  Defendants have failed to produce any bank statements showing what happened to the money deposited by Defendants' in accounts where Defendants had access to.

**Request No. 33:**    All documents evidencing the amount and sources of the income you and your spouse, **CHERIE J. BROOKS,** who is also known as **CHERIE J. BROOKS-WALLACE,** received or earned in the calendar years 2006, 2007, 2008 and 2009 including but not limited to pay stubs, income tax returns, schedules and forms, distribution reports, dividends, royalties, payroll and payroll tax forms and IRS 1099 forms.

Response:    Tax records are included in the documents.  Pay stub documentation is shown on the account statements that are in the possession of the Plaintiff.

Response is improper:    No tax records were provided.  Defendants have not provided any account statements from any bank or other financial institution and Plaintiff is not in possession of any such statements.

**Request No. 35:**    All documents pertaining to any applications for credit made by **you** from the period of January 2007 through December 2009 inclusive.

Response:    Defendant had strong credit and used credit score for access to loans and lines of credit.

Response is improper:    Defendants, while admitting that documents exist, failed to produce any documents in response to this request.

9

**Request No. 36:**     All documentation pertaining to **your** personal or business relationship(s) with Paul Marvel, who is also known as Paul C. Marvel, III.

<u>Response:</u>     The only documents pertaining to our relationship are included.  These are sales receipts from vehicles sold and other lessee on the L&A Auto Sales Lease.

<u>Response is improper:</u>     No documents were provided with the exception of a single, unrelated bill of sale document.  No Auto Sales Lease was provided.

**Request No. 37:**     All documentation pertaining to **your** personal or business relationship(s) with Edward A. Downs, who is also known as Alan Downs.

<u>Response:</u>     The only documents pertaining to our relationship are included.  These are sales receipts from vehicles sold and other lessee on the L&A Auto Sales Lease.

<u>Response is improper:</u>     No documents were provided with the exception of a single, unrelated bill of sale document.  No Auto Sales Lease was provided.

**Request No. 38:**     All documentation pertaining to **your** personal or business relationship(s) with Elaine J. Downs.

<u>Response:</u>     The only documents pertaining to our relationship are included.  These are sales receipts from vehicles sold and other lessee on the L&A Auto Sales Lease.

<u>Response is improper:</u>     No documents were provided with the exception of a single, unrelated bill of sale document.  No Auto Sales Lease was provided.

**Request No. 40:**     All documentation pertaining to **your** personal or business relationship(s) with Shannon Starke.

<u>Response:</u>     The only documents pertaining to our relationship are included.  These are sales receipts from vehicles sold and other lessee on the L&A Auto Sales Lease.

<u>Response is improper:</u>     No documents were provided with the exception of a single,

10

unrelated bill of sale document.  No Auto Sales Lease was provided.

**Request No. 41:**      All documentation in your possession, custody or control pertaining to any

transactions using the name "L&A Auto Sales."

     <u>Response:</u>      We have included what we have. Some of our files were lost in the move

when I our home was foreclosed on.  Unable to obtain copies due to restrictions for the local

sales.

     <u>Response is improper:</u>    Defendants have failed to produce documents responsive to this

request.  Defendants failed to produce bank records for accounts owned and maintained by

Defendants.  Exhibit 1.

**Request No. 42:**      All documentation pertaining to the payments made by you on **Loan #1**.

     <u>Response:</u>      All documents of payments are included on the statements from our

personal accounts.

     <u>Response is improper:</u>    Defendants have failed to produce documents responsive to this

request.  Defendants failed to produce bank records for accounts owned and maintained by

Defendants.  Exhibit 1.

**Request No. 43:**      All documentation pertaining to the **identity** of all individuals with

personal knowledge of the subject matter of the **Adversary Complaint** or **Answer.**

     <u>Response:</u>      None

     <u>Response is improper:</u>      Defendants failed to respond at all.

**Request No. 44:**      All documentation pertaining to the **identity** of all persons whom you

expect to call as expert witnesses at trial.

     <u>Response:</u>      None

     <u>Response is improper:</u>      Defendants failed to respond at all.

**Request No. 45:**      All documentation pertaining to the **identity** of all individuals who have given you statements concerning the subject matter of this action.

    <u>Response:</u>      None

    <u>Response is improper:</u>      Defendants failed to respond at all.

**Request No. 46:**      All documentation pertaining to the **identity** of any written or oral statements concerning the subject matter of this action made by this party or any agent, representative or employee of this party.

    <u>Response:</u>      None

    <u>Response is improper:</u>      Defendants failed to respond at all.

**Request No. 48:**      Copies of all documents which support any or all of the contentions made in your **Answer**.

    <u>Response:</u>      Request ambiguous and unclear.

    <u>Response is improper:</u>      The request is plain and unambiguous. If Defendant has any documents that support any contention made in Defendants' Answer to Complaint, they must provide them. Otherwise, they are inadmissible as a defense in this matter.

**Request No. 49:**      All documents which support any denials contained in your Response to the Request for Admissions of Fact and Genuineness of Documents propounded by the Plaintiff to you in these proceedings.

    <u>Response:</u>      Request ambiguous and unclear.

    <u>Response is improper:</u>      The request is plain and unambiguous. If Defendant has any documents that support any denial made in Defendants' Answer to Complaint, they must provide them. Otherwise, they are inadmissible as a defense in this matter.

**Request No. 51:**      Copies of all documents which support your refutation of the damages

Plaintiff alleges to have suffered in this action.

    <u>Response:</u>    The documents pertaining to this are included in the previous request.

    <u>Response is improper:</u>    Defendant has failed to identify which documents were responsive to this request.

**Request No. 52:**    Copies of all accounting journals, ledgers, worksheets, work breakdown structures, or other documents which detail the payments made by **you,** or on **your** behalf under **Loan #1** and/or **Loan #2.**

    <u>Response:</u>    The documents pertaining to this are included in the previous request.

    <u>Response is improper:</u>    Defendant has failed to identify which documents were responsive to this request.

**Request No. 53:**    Copies of all contracts, agreements or other documents which refer, relate or otherwise pertain to Plaintiff.

    <u>Response:</u>    The documents pertaining to this are included in the previous request.

    <u>Response is improper:</u>    Defendant has failed to identify which documents were responsive to this request.

**Request No. 54:**    Copies of all notes, e-mails, correspondence or other documents sent to or received from Plaintiff.

    <u>Response:</u>    The documents pertaining to this are included in the previous request.

    <u>Response is improper:</u>    Defendant has failed to identify which documents were responsive to this request.

**Request No. 55:**    All documents evidencing, identifying or related in any way to the present location of **Vehicle #2.**

    <u>Response:</u>    The documents pertaining to this are included in the previous request.

2f79

<u>Response is improper:</u>        Defendant has failed to identify which documents were responsive to this request.

**Request No. 58:**      All documents which evidence or pertain in any way to the current registration of **Vehicle #1** and **Vehicle #2** with any and all Departments of Motor Vehicles and any which tags issued in **your** name.

    <u>Response:</u>      Tags and Registration for vehicle 2 is included.

    <u>Response is improper:</u>        No documents responsive to this request were provided.


Dated: 8/11/2011                      Respectfully submitted,

                      /s/ Ken C. Gauvey
                      Douglas H. Seitz (Fed. Bar No. 04909)
                      Ken C. Gauvey (Fed. Bar No. 28464)
                      Offit Kurman, PA
                      8 Park Center Court, Suite 200
                      Owings Mills, Maryland  21117
                      (443) 738-1584
                      <u>dseitz@offitkurman.com</u>
                      Attorneys for GBBR FEDERAL CREDIT UNION

### CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 11th day of August, 2011, a copy of the foregoing Motion for Civil Contempt attached thereto was mailed via U.S. Postal Service, first class mail, postage prepaid to Robert Wallace, 232 Ritterslea Court, Owings Mills, MD 21117 and Cherie J. Brooks-Wallace, 232 Ritterslea Court, Owings Mills, MD 21117.


                      /s/ Ken C. Gauvey
                      Ken C. Gauvey

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE: | * | |
| ROBERT WALLACE and | * | Case No.: 09-32921 RAG |
| CHERIE J. BROOKS-WALLACE | | |
| Debtors | * | Chapter 7 |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

| | | |
|---|---|---|
| GBBR FEDERAL CREDIT UNION | * | |
| Plaintiff | * | |
| vs. | * | Adversary No.: 10-00126 |
| ROBERT WALLACE and | * | |
| CHERIE J. BROOKS-WALLACE | | |
| Defendants | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## ORDER GRANTING PLAINTIFF'S
## RENEWED MOTION FOR SANCTIONS

Upon consideration of the Plaintiff's Renewed Motion for Sanctions filed herein, it is by this

United States Bankruptcy Court for the District of Maryland,

ORDERED, that Plaintiff's motion is hereby GRANTED; and it is further

ORDERED that default judgment be entered against Defendants jointly and severally; or, in the alternative it is

ORDERED that Defendants' Answer to Plaintiff's Complaint is hereby stricken from the record; or, in the alternative it is

ORDERED that Defendants will fully respond to all discovery requests submitted by Plaintiff without objections in accordance with the order of this Court on January 4, 2011 on or before _____, 2011 or be held in contempt of Court; and it is further

ORDERED that the discovery deadline be extended until _____, 2011; and it is further

ORDERED that attorneys fees be assessed against Defendants, Robert D. Wallace and Cherie J. Wallace Brooks, in the amount of $1,750.00, and that amount to be immediately reduced to a judgment against Defendants to the benefit of Plaintiff, this amount be in addition to the $500.00 assessed against the Defendants on January 4, 2011.


Robert Wallace
232 Ritterslea Court
Owings Mills, MD 21117

Cherie J. Brooks-Wallace
232 Ritterslea Court
Owings Mills, MD 21117

Douglas H. Seitz
8 Park Center Court, Suite 200
Owings Mills, MD 21117

                    END OF ORDER